IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

AUGUSTA DIVISION

BRIAN LITTLE, surviving spouse, on )
behalf of LYNETTE N. LITTLE )
(deceased), )
 )
        Plaintiff, )
 )
v. ) CV 110-140
 )
MICHAEL J. ASTRUE, Commissioner )
of Social Security Administration, )
 )
        Defendant. )

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Brian Little ("Plaintiff") appeals the decision of the Commissioner of Social Security (the "Commissioner") denying the application filed by his deceased wife, Lynette N. Little ("Claimant"), for Disability Insurance Benefits ("DIB") under the Social Security Act. Upon consideration of the briefs submitted by both parties, the record evidence, and the relevant statutory and case law, the Court **REPORTS** and **RECOMMENDS** that the Commissioner's final decision be **AFFIRMED**, that this civil action be **CLOSED**, and that a final judgment be **ENTERED** in favor of the Commissioner.

I.    **BACKGROUND**

Claimant applied for DIB in September of 2007, alleging a disability onset date of April 1, 2001. Tr. ("R."), pp. 16, 69.[1] The Social Security Administration denied Claimant's

---

[1] Initially, Claimant also applied for Social Security Income ("SSI"), but she was determined to be ineligible because of her spouse's income level. R. 649-52. Plaintiff does

applications initially, R. 26-29, and on reconsideration, R. 31-32. Claimant then requested a hearing before an Administrative Law Judge ("ALJ"), and, following a continuance requested by Claimant, the ALJ held a hearing on December 1, 2009. R. 708-39. Claimant, who was represented by counsel, testified on her own behalf at the hearing; the ALJ also heard the testimony of a vocational expert ("VE"). R. 711, 733-34. On December 14, 2009, the ALJ issued an unfavorable decision. R. 16-23.

Applying the five-step sequential process required by 20 C.F.R. § 404.1520, the ALJ found:

1. Claimant did not engage in substantial gainful activity during the period from her alleged onset date of April 1, 2001, through her date last insured of December 31, 2003 (20 C.F.R. § 404.1571 *et seq.*).

2. Through the date last insured, Claimant had the severe impairments of anxiety and status post bilateral cataract removal (20 C.F.R. § 404.1520(c)).

3. Through the date last insured, Claimant did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.

4. Through the date last insured, Claimant had the residual functional capacity ("RFC") to perform a full range of work at all exertional levels but with the following nonexertional limitations: Claimant could not work at unprotected heights or around dangerous machinery. She was limited to simple tasks with simple instructions. Therefore, Claimant was unable to perform any past relevant work (20 C.F.R. § 404.1565).

5. Through the date last insured, considering Claimant's age, education, work experience, RFC, and the testimony of the VE, there were jobs in the national economy that Claimant could have performed (20 C.F.R. §§ 404.1569 & 404.1596(a)). Thus, Claimant was not under a disability, as defined in the Social Security Act, at any time from

---

not challenge the denial of Claimant's application for SSI.

2

April 1, 2001, the alleged onset date, through December 31, 2003, the
date last insured (20 C.F.R. § 404.1520(g)).

R. 11-16.

When the Appeals Council ("AC") denied Claimant's request for review, the Commissioner's decision became "final" for the purpose of judicial review. 42 U.S.C. § 405(g). Shortly thereafter, Claimant died of brain cancer, and Plaintiff, as her surviving spouse, was made a substituted party regarding her DIB claim. R. 706-07. Plaintiff proceeded to file this civil action requesting reversal of the adverse decision. Plaintiff argues that the Commissioner's decision is not supported by substantial evidence because: (1) the ALJ failed to mention a neuropsychological examination performed on November 23, 2009, and (2) the ALJ improperly concluded that Claimant's brain tumor was not a severe impairment. (See doc. no. 9 (hereinafter "Pl.'s Br.").) The Commissioner maintains that the decision to deny Plaintiff's application for DIB was supported by substantial evidence and should be affirmed. (See doc. no. 12 (hereinafter "Comm'r's Br.").)

## II. STANDARD OF REVIEW

Judicial review of social security cases is narrow and limited to the following questions: (1) whether the Commissioner's findings are supported by substantial evidence, Richardson v. Perales, 402 U.S. 389, 390 (1971); Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991); and (2) whether the Commissioner applied the correct legal standards. Chester v. Bowen, 792 F.2d 129, 131 (11th Cir. 1986). When considering whether the Commissioner's decision is supported by substantial evidence, the reviewing court may not decide the facts anew, reweigh the evidence, or substitute its judgment for the Commissioner's. Cornelius, 936 F.2d at 1145. Notwithstanding this measure of deference,

3

the Court remains obligated to scrutinize the whole record to determine whether substantial evidence supports each essential administrative finding. Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983).

The Commissioner's factual findings should be affirmed if there is substantial evidence to support them. Barron v. Sullivan, 924 F.2d 227, 230 (11th Cir. 1991). Substantial evidence is "more than a scintilla, but less than a preponderance: '[i]t is such relevant evidence as a reasonable person would accept as adequate to support a conclusion.'" Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990) (quoting Bloodsworth, 703 F.2d at 1239). If the Court finds substantial evidence exists to support the Commissioner's factual findings, it must uphold the Commissioner even if the evidence preponderates in favor of the claimant. Id. Finally, the Commissioner's findings of fact must be grounded in the entire record; a decision that focuses on one aspect of the evidence and disregards other contrary evidence is not based upon substantial evidence. McCruter v. Bowen, 791 F.2d 1544, 1548 (11th Cir. 1986).

The deference accorded the Commissioner's findings of fact does not extend to his conclusions of law, which enjoy no presumption of validity. Brown v. Sullivan, 921 F.2d 1233, 1236 (11th Cir. 1991) (holding that judicial review of the Commissioner's legal conclusions are not subject to the substantial evidence standard). If the Commissioner fails either to apply correct legal standards or to provide the reviewing court with the means to determine whether correct legal standards were in fact applied, the Court must reverse the decision. Wiggins v. Schweiker, 679 F.2d 1387, 1389 (11th Cir. 1982).

4

## III. DISCUSSION

Before addressing Plaintiff's specific claims, it is important to note at the outset that entitlement to DIB, unlike SSI, depends on the existence of disability prior to the date last insured, which for Claimant was December 31, 2003. R. 18.[2] Therefore, as the Commissioner points out, the fact that only DIB and not SSI is at issue in the instant case significantly restricts the relevant time frame. See Comm'r's Br., p. 2 n.2.

### A. The ALJ's Findings Regarding Claimant's Severe Impairments Are Supported by Substantial Evidence

Plaintiff argues that the ALJ erred in his determination at step two of the sequential process that Claimant's brain tumor was not a "severe" impairment through December 31, 2003, her last date insured. Pl.'s Br., pp. 10-13. In particular, Plaintiff asserts that Claimant's medical records show that her tumor appeared in 2003 and became a severe impairment prior to the end of that year. Id. The Commissioner argues that the ALJ's determination as to the non-severity of Claimant's tumor during the time period in question was supported by substantial evidence. Comm'r's Br., pp. 19-21. In addition, the Commissioner downplays the significance of the ALJ's step two determination, asserting that it is unimportant whether an ALJ classifies particular impairments as severe at step two so long as he finds the totality of impairments to be sufficiently severe to proceed to the latter steps of the sequential process. Comm'r's Br., pp. 21-22.

Because the step two determination as to the severity of particular impairments has ramifications for the analyses to be undertaken in the subsequent steps, the Court does not

---

[2]Plaintiff does not dispute the ALJ's determination as to Claimant's date last insured.

5

endorse the characterization of step two set forth in the Commissioner's brief.[3] Nevertheless, the question remains whether the ALJ's step two determination as to the non-severity of Claimant's brain tumor is supported by substantial evidence; if so, the ALJ's decision as to this issue must be affirmed.

A severe impairment is one which significantly limits one's ability to perform "basic work activities." 20 C.F.R. § 404.1521(a) ("An impairment or combination of impairments is not severe if it does not significantly limit your physical or mental ability to do basic work activities."). Basic work activities involve "the abilities and aptitudes necessary to do most jobs." 20 C.F.R. § 404.1521(b). Examples include:

(1) Physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling;
(2) Capacities for seeing, hearing, and speaking;
(3) Understanding, carrying out, and remembering simple instructions;
(4) Use of judgment;
(5) Responding appropriately to supervision, co-workers and usual work situations; and
(6) Dealing with changes in a routine work setting.

Id.

Thus, in order to show a severe impairment, Plaintiff bears the burden of demonstrating that such impairment significantly affected Claimant's ability to perform basic work activities. See McDaniel v. Bowen, 800 F.2d 1026, 1031 (11th Cir. 1986); Brady v. Heckler, 724 F.2d 914, 920 (11th Cir. 1984) (*per curiam*). At the second step of the sequential evaluation process:

---

[3]For example, severe impairments, unlike non-severe impairments, must typically be included in a hypothetical question asked to the VE, which can effect the resolution of later steps in the sequential process. See, e.g., Loveless v. Massanari, 136 F. Supp.2d 1245, 1250-51 (M.D. Ala. 2001).

6

> If you do not have any impairment or combination of impairments which significantly limits your physical or mental ability to do basic work activities, we will find that you do not have a severe impairment and are, therefore, not disabled. We will not consider your age, education, and work experience.

20 C.F.R. § 404.1520(c). However, the severity test at step two of the sequential process is designed to screen out only clearly groundless claims. Stratton v. Bowen, 827 F.2d 1447, 1452 (11th Cir. 1987) (citing Baeder v. Heckler, 768 F.2d 547, 551 (3d Cir. 1985) for the proposition that the severity test has been described "as a de minimis requirement which only screens out those applicants whose medical problems could 'not possibly' prevent them from working").

In fact, the Eleventh Circuit describes step two as the "slight abnormality" test. Bridges v. Bowen, 815 F.2d 622, 625 (11th Cir. 1987) (*per curiam*) (citing Brady, 724 F.2d 914). Under this test,

> an impairment can be considered as not severe only if it is a slight abnormality which has such a minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education, or work experience.

Id. As the Eleventh Circuit has explained, "[s]tep two is a threshold inquiry" and "allows only claims based on the most trivial impairments to be rejected." McDaniel, 800 F.2d at 1031. The claimant's burden is "mild," id., and "the claimant need only show that an abnormality's effect is not so minimal that it would not interfere with [her] ability to work irrespective of age, education, or work experience." Cantrell v. Bowen, 804 F.2d 1571, 1573 (11th Cir. 1986) (*per curiam*). With these basic principles in mind, the Court turns its attention to the determinations by the ALJ challenged by Plaintiff in the instant case.

In his decision, the ALJ discussed the medical evidence concerning Claimant's brain

7

tumor and the severity of the attendant symptoms during the relevant time frame. As the Commissioner points out, see Comm'r's Br., pp. 20-21, the ALJ emphasized that the record contains only one piece of evidence from before the date last insured relating to Claimant's tumor, a report from an emergency room visit in January 2003 indicating Claimant had complained of dizziness, lightheadedness, and leg spasms. R. 19, 402-19. The ALJ specifically noted that during her January 2003 visit, the emergency room physician instructed Claimant to follow up if her symptoms persisted; however, she was not again seen by a physician until approximately three and a half months after her date last insured on April 14, 2004, at which point she complained of experiencing a "funny twist" in her brain, as well as brief leg tremors that began as intermittent in 2003 but occurred daily during the four to five month period preceding her April 14th evaluation. R. 19, 502, 522. The ALJ noted that Claimant's symptoms abated in June of 2004 following a Valium prescription. R. 19, 519-20.

In addition, the ALJ discussed the eventual diagnosis and progression of her tumor, as well as the subsequent courses of treatment provided, including a surgery to remove a portion of the tumor in 2005 and, later, chemotherapy and radiation therapy. See R. 19. In light of this medical evidence, the ALJ declined to find that Claimant's brain tumor constituted a severe impairment on or before December 31, 2003; the ALJ stated, "In all likelihood, the Claimant's brain tumor was present at the time of the date last insured, but was not medically determinable and manifested only vague symptoms until almost a year after [C]laimant's date last insured." R. 21.

In short, the ALJ cited specific medical evidence from the record in support of his

determination as to the non-severity of Claimant's brain tumor prior to the date last insured. Plaintiff disputes this finding, arguing that the medical evidence from both before and after the date last insured shows that the symptoms she experienced in 2003, including dizziness, lightheadedness, and leg tremors, were caused by the tumor. See Pl.'s Br., p. 11. Plaintiff also notes the increased frequency of Claimant's leg tremors during the four to five month period preceding her April 2004 evaluation. See id.

In addition, Plaintiff points to an April 2, 2010 letter from Dr. David A. Reardon provided "in support of [Claimant's] Social Security Disability Appeal." Id.; R. 698. Plaintiff emphasizes the following portion of Dr. Reardon's letter:

> After review of the patient's past medical records from January 3, 2003 through diagnosis in January 2005, we feel that the documented symptoms described in her records <u>could have</u> represented seizure activity secondary to a growing low grade brain tumor in the frontal lobe, which was subsequently diagnosed as a malignant brain tumor.
>
> As tumors in the frontal lobe grow, they <u>may cause</u> a variety of symptoms. Some symptoms may include: short term memory loss, impaired judgment, and personality/mental changes. There also may be some seizure activity, one-sided paralysis, gait disturbances and communication problems. Frontal lobe tumors affect intellectual functioning, thought processes, behavior, and memory.

R. 698 (emphasis added). Notably, this evidence was not submitted to the ALJ, but rather was first presented to the AC when Claimant challenged the ALJ's unfavorable decision at the administrative level. R. 698. Plaintiff asserts that Dr. Reardon's letter constitutes "new evidence," and he argues that it warrants remand pursuant to sentence six of 42 U.S.C. § 405(g). Pl.'s Br., p. 12.

Plaintiff's arguments are unpersuasive. While Plaintiff's assertion that the leg tremors and other symptoms were caused by Claimant's brain tumor finds support in the

9

record, that assertion fails to show any error by the ALJ. Indeed, the ALJ acknowledged the likely presence of the tumor at the time of the date last insured; however, the key finding in this regard is that, in light of the symptoms caused by the tumor prior to the date last insured, it did not amount to a "severe impairment" at that time. Plaintiff points to no medical evidence demonstrating how the tumor or the symptoms experienced during the relevant time frame affected Claimant's ability to perform work activities. Moreover, as noted by the ALJ and the Commissioner, Claimant's symptoms were intermittent from the time they appeared until some time around the end of 2003 or the beginning of 2004. R. 19-21, 522-23; see also Comm'r's Br., p. 21. In addition, the medical evidence cited by the ALJ makes clear that during the time preceding the date last insured the symptoms were mild and, when they occurred, lasted for less than a minute. R. 19-21, 522-23.

Regarding the letter from Dr. Rearden, Plaintiff is incorrect in asserting that evidence first presented to the AC may serve as the basis for a sentence six remand under § 405(g). Under Eleventh Circuit law, remand under sentence six may only be had when new evidence is presented in the first instance to the district court, and a plaintiff cannot obtain a sentence six remand based on evidence submitted to the AC. Ingram v. Comm'r of Soc. Sec. Admin., 496 F.3d 1253, 1267-68 (11th Cir. 2007). Rather, "when a claimant properly presents new evidence to the [AC], a reviewing court must consider whether that new evidence renders the denial of benefits erroneous." Id. at 1262. In other words, the relevant question is whether "new, material, chronologically relevant evidence" was presented to the AC that "render[ed] the decision of the [ALJ] to deny benefits unsupported by substantial evidence [such that] the [AC] erred by denying review." Id. at 1261, 1266. If Plaintiff meets this standard,

remand is appropriate pursuant to sentence four of § 405(g), not sentence six. Id. at 1266-67; Hoffman v. Astrue, 259 F. App'x 213, 220 (11th Cir. 2007) (*per curiam*) (noting that sentence four provides basis for remand when the AC fails to adequately consider additional evidence not presented to the ALJ).

Here, however, Plaintiff has plainly failed to satisfy this standard. As noted previously, Dr. Reardon concludes in his letter that "the documented symptoms described in Claimant's records," including the leg tremors and other symptoms described in the January 2003 and April 2004 reports, "could have represented seizure activity secondary to a growing low grade brain tumor in the frontal lobe, which was subsequently diagnosed as a malignant brain tumor." R. 698 (emphasis added). However, as the Commissioner is quick to point out, "the ALJ did not discredit the correlation between Claimant's symptoms and her tumor." Comm'r's Br., p. 24; R. 21 ("In all likelihood, [C]laimant's brain tumor was present at the time of the date last insured . . . ."). Moreover, Dr. Reardon's letter, dated over seven years after the date last insured and based on the same medical records examined by the ALJ, uses equivocal language, such as "could have," and catalogues a number of symptoms that frontal lobe tumors may cause, such as short term memory loss and decreased intellectual functioning; however, he does not opine that Claimant experienced such symptoms during the relevant time period. See R. 698; see also Hoffman, 289 F. App'x at 220 (finding sentence four remand not warranted where claimant had presented a new medical report to the AC that "was based on the medical records already before the ALJ").

In short, Dr. Reardon's letter did not contradict the ALJ's findings regarding the causation or severity of Claimant's tumor-related symptoms during the time period preceding

11

the date last insured. Therefore, Plaintiff has failed to show that the letter rendered the ALJ's findings erroneous such that the AC erred in denying review. See Ingram, 496 F.3d at 1266-67.

In sum, the Court is mindful that Plaintiff's burden to show the severity of a particular impairment is not a heavy one. See McDaniel, 800 F.2d at 1031. Here, however, the ALJ's determination that Claimant's tumor was not a severe impairment during the relevant time period is supported by substantial evidence, and that conclusion remains unaltered by the new evidence submitted to the AC. Accordingly, the Court finds that this issue provides no basis for remand.

### B. The ALJ's Disability Determination Is Supported By Substantial Evidence Despite Not Mentioning the November 23, 2009 Evaluation

The Court turns next to Plaintiff's argument that the ALJ "erred in failing to mention or discuss the weight given to the neuropsychological evaluation performed November 23, 2009." Pl.'s Br., p. 8. The evaluation that Plaintiff refers to was performed by Dr. Lawrence Hartlage, Ph.D., in conjunction with Claimant's DIB claim. R. 644-45. The report indicates that Claimant suffered cognitive impairments at the time of the evaluation, and Dr. Hartlage opined that, as of that time, Claimant was not "capable of substantial gainful activity at a competitive level on any sustained basis." Id. Plaintiff argues that the ALJ erred by failing to "state with particularity the weight he gave [Dr. Hartlege's evaluation] and the reasons therefore," and as a result, he asserts, "this case should be remanded for further consideration of that opinion." Pl's Br., pp. 9-10 (quoting Sharfarz v. Bolin, 825 F.2d 278 (11th Cir. 1987)).

The Commissioner, on the other hand, argues that the ALJ was not obliged to

explicitly discuss Dr. Hartlage's 2009 evaluation. The Commissioner further contends that the ALJ's failure to mention the report does not warrant remand because Plaintiff has not attempted to show the relevance of Dr. Hartlage's evaluation or to demonstrate any prejudice resulting from the ALJ's failure to discuss the evaluation explicitly in his decision. Comm'r's Br., pp. 11-19.

The Court concludes that the Commissioner has the better argument. The Eleventh Circuit has clarified that "there is no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision, so long as the ALJ's decision . . . is not a broad rejection which is 'not enough to enable [the Court] to conclude that the ALJ considered her medical condition as a whole.'" Dyer v. Barnhart, 395 F.3d 1206, 1211 (11th Cir. 2005) (quoting Foote v. Chater, 67 F.3d 1553, 1560 (11th Cir. 1995)) (punctuation omitted); see also McCray v. Massanari, 175 F. Supp. 2d 1329, 1336 (M.D. Ala. 2001) ("[A]n ALJ is not required to discuss every piece of evidence submitted." (quoting Black v. Apfel, 143 F.3d 383, 386 (8th Cir. 1998))). Here, the ALJ's decision does not broadly reject Claimant's DIB application such that the Court cannot determine that he considered her medical condition as a whole. To the contrary, as noted above, the ALJ's decision provides a thorough discussion of Claimant's condition during the relevant time frame. See supra Part III.A.

Furthermore, as the Commissioner persuasively argues, see Comm'r's Br., p. 15, Dr. Hartlage makes clear that he did not examine any of Claimant's records prior to his evaluation and that his opinion as to Claimant's condition relates to the time of the evaluation – November 23, 2009, roughly six years after Claimant's date last insured. See R. 644-45. Given that time frame, Dr. Hartlage's report does not contradict the findings of

the ALJ, who found that Claimant "had progression of her tumor in 2009" but did not suffer a disabling condition in 2003 prior to her date last insured. R. 19. Moreover, unlike the cases Plaintiff primarily relies upon, this is not a case in which the ALJ disregarded a treating physician's opinion in favor of other evidence without explanation. Cf. Sharfarz v. Bowen, 825 F.2d 278, 279-280 (11th Cir. 1987); Ryan v. Heckler, 762 F.2d 939, 942 (11th Cir. 1985). Rather, this is a case that Plaintiff invites the Court to remand for the Commissioner to consider an evaluation that relates to Claimant's condition six years after the relevant time period and with regard to which Plaintiff has shown nothing other than the fact that the ALJ did not refer to it explicitly. However, the ALJ is not required to refer to every piece of evidence where, as here, his decision is supported by substantial evidence and does not amount to an impermissibly broad rejection of Claimant's application. See Dyer, 395 F.3d at 1211. Accordingly, the Court finds that the ALJ's omission of a reference to Dr. Hartlage's 2009 evaluation provides no basis for remand.

## IV. CONCLUSION

For the reasons set forth above, the Court **REPORTS** and **RECOMMENDS** that the Commissioner's final decision be **AFFIRMED**, that this civil action be **CLOSED**, and that a final judgment be **ENTERED** in favor of the Commissioner.

SO REPORTED and RECOMMENDED this 10th day of January, 2012, at Augusta, Georgia.

W. LEON BARFIELD
UNITED STATES MAGISTRATE JUDGE

14